UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Minnesota Power and Affiliated Companies
Retirement Plan A; Minnesota Power and
Affiliated Companies Retirement Plan B;
Minnesota Power and Affiliated Companies
Master Pension Trust; ALLETE Employee
Benefit Plans Committee; ALLETE
Retirement Plans Investment Subcommittee;
ALLETE, Inc., successor in interest to
Minnesota Power and affiliated companies;
and U.S. Bank National Association,

     Plaintiffs,

 v.

Capital Guardian Trust Company,

     Defendant.

MEMORANDUM OPINION
AND ORDER
Civil No. 07-3866 ADM/RLE

___

Lauren E. Lonergan, Esq., Briggs & Morgan, P.A., Minneapolis, MN, on behalf of Plaintiffs.

Diane M. Soubly, Esq., Seyfarth Shaw, LLP, Boston, MA, and Tracey L. Baubie, Esq., Kelly & Berens, P.A., Minneapolis, MN, on behalf of Defendant.

___

## I. INTRODUCTION

On April 15, 2008, the undersigned United States District Judge heard oral argument on Defendant Capital Guardian Trust Company's ("Capital Guardian") Motion to Dismiss [Docket No. 25] the Amended Complaint [Docket No. 20] of Plaintiffs Minnesota Power and Affiliated Companies Retirement Plan A; Minnesota Power and Affiliated Companies Retirement Plan B; Minnesota Power and Affiliated Companies Master Pension Trust; ALLETE Employee Benefit Plans Committee; ALLETE Retirement Plans Investment Subcommittee; ALLETE, Inc., successor in interest to Minnesota Power and affiliated companies; and U.S. Bank National Association (collectively "Plaintiffs"). Capital Guardian has also filed a Motion to Strike

Plaintiffs' Request for Compensatory Damages and Jury Trial Demand [Docket No. 30]. For the reasons stated herein, Capital Guardian's Motions are denied.

## II.  BACKGROUND[1]

ALLETE, Inc. ("ALLETE"), formerly known as Minnesota Power Inc. and Minnesota Power and Light Company, is a diversified utility company with its principal place of business in Duluth, Minnesota. Am. Compl. ¶ 1. ALLETE sponsors for its employees tax-qualified defined benefit retirement plans including Minnesota Power and Affiliated Companies Retirement Plans A and B (collectively "the Plans"). Id. ¶ 2. ALLETE Employee Benefit Plans Committee ("the Committee") administers the Plans. Id. The ALLETE Retirement Plans Investment Subcommittee ("RPIS") authorizes specific investments of the Plans' assets within the parameters set by the Committee and the trustee to the Plans' trust, U.S. Bank, which has its principal place of business in Minnesota. Id. ¶¶ 2-3.

Capital Guardian, which has its principal place of business in California, entered into an investment management agreement with the RPIS on October 1, 2002. Id. ¶ 8. The investment management agreement provided Capital Guardian

> (i) had the power to manage, acquire, and dispose of plan assets; (ii) was registered as an investment advisor under the Investment Advisers Act of 1940; (iii) was a fiduciary with respect to both the Plan and the discretionary investment management accounts Capital Guardian established as investment manager; (iv) was an investment manager within the meaning of ERISA Section 3(38); and (v) was to exercise its investment authority according to ERISA's fiduciary standards.

Id. ¶ 14. Pursuant to the authority in the investment management agreement, Capital Guardian

---

[1] In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

invested the Plans' assets in the Capital Guardian All Country World Ex. U.S. Equity Fund for Retirement Plans (the "ACWE Fund"). Id. ¶ 17.

As early as mid-2005, the RPIS decided to transfer the Plans' assets managed by Capital Guardian and notified Capital Guardian of the Plans' intent to liquidate the Plans' ACWE Fund investment. Id. ¶¶ 22-23. At that time, the Plans' ACWE Fund investment exceeded $50,000,000. Id. ¶ 23. In late August 2005, the decision was made to transfer the Plans' ACWE Fund to Barclays Global Investors ("Barclays"). Id. ¶ 25. The RPIS intended that Capital Guardian liquidate the Plans' assets by the end of the day on August 31, 2005, so the assets could be re-invested with Barclays at the end of the day on August 31st. Id. ¶ 27. Capital Guardian confirmed that if the Plan gave notice by August 24, 2005, the withdrawal and valuation date would be effective as of August 31, 2005, as the RPIS intended. Id. ¶ 28.

The RPIS then instructed U.S. Bank to direct Capital Guardian to liquidate the Plans' investment in the ACWE Fund, which U.S. Bank did by letter dated August 22, 2005. Id. ¶¶ 29-30. In its August 22, 2005, letter, U.S. Bank instructed Capital Guardian to liquidate the Plans' investment in the ACWE Fund on August 31, 2005. Id. ¶ 30. On August 24, 2005, Capital Guardian informed Plaintiffs that to effect the liquidation, it intended to transfer the Plans' ACWE Fund investment to a liquidating account. Id. ¶ 31. Because Capital Guardian had not previously indicated that it intended to use a liquidating account to effect the transfer of the ACWE Fund investment, Plaintiffs sought confirmation regarding when the proceeds from the liquidation would be available. Id. ¶ 33. Capital Guardian responded that the funds would be available on September 6, 2005, but did not inform Plaintiffs that it intended to liquidate the assets on August 30, 2005, rather than August 31, 2005, as U.S. Bank had instructed. Id. ¶ 34.

On August 25, 2005, Capital Guardian sent Plaintiffs a letter confirming its proposed use of a liquidating account for the Plans' ACWE Fund investment. Id. ¶¶ 36-37. In the letter, Capital Guardian acknowledged U.S. Bank's August 22, 2005, letter but again did not mention that it intended to liquidate the Plans' assets on August 30, 2005, rather than August 31, 2005.

On August 26, 2005, Capital Guardian executed a pro-rata distribution of the Plans' ACWE Fund investment into the liquidating account. Id. ¶ 41. Capital Guardian performed the allocation and transfer of the Plans' ACWE Fund investment into the liquidating account, determined which foreign exchanges would be used to sell the securities, and determined the timing and manner of liquidation of the Plans' ACWE Fund investment into cash. Id. ¶¶ 46, 48.

On August 30, 2005, Capital Guardian liquidated the Plans' ACWE Fund investment. Id. ¶ 50. On August 31, 2005, the market value of the ACWE Fund investment increased by 1.25%. Id. ¶ 52. Accordingly, had Capital Guardian liquidated the assets in the liquidating account on August 31, 2005, instead of August 30, 2005, the Plans would have realized an additional $800,000 gain. Id. ¶ 53.

Plaintiffs contend that Capital Guardian was acting as a fiduciary when it liquidated the assets in the liquidating account one day prior than directed. Capital Guardian allegedly breached its fiduciary duty under the Employment Retirement Income Security Act ("ERISA") § 502(a)(2), 29 U.S.C. § 1132(a)(2). Plaintiffs also assert state law claims of common law breach of fiduciary duty; breach of contract based on the investment management agreement and Capital Guardian's August 25, 2005, letter; and a claim that Capital Guardian acted negligently in its role as an investment manager, trustee, and fiduciary for the Plans.

4

### III.  DISCUSSION

A.      **Motion to Dismiss**

Capital Guardian seeks dismissal of Plaintiffs' ERISA claim for breach of fiduciary duty contending it was not acting as a fiduciary when it liquidated the Plans' securities. Capital Guardian also argues Plaintiffs' state law claims are preempted by ERISA and thus should be dismissed.

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880.

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

      1.      **Fiduciary Status**

ERISA defines a fiduciary as one who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). The Eighth Circuit has determined that 29 U.S.C. § 1104(a)(1), which sets forth the duty owed by an ERISA

fiduciary, "imposes fiduciary duties only if one exercises *discretionary* authority or control over plan *management*, but imposes those duties *whenever* one deals with plan *assets*." FirsTier Bank v. Zeller, 16 F.3d 907, 911 (8th Cir. 1994) (emphasis in original). The distinction between one who deals with plan management versus one who deals with plan assets is not accidental; rather, "it reflects the high standard of care trust law imposes upon those who handle money or other assets on behalf of another." Id. "[F]iduciary status under § 1002(21)(A) is not an all or nothing concept . . . . [A] court must ask whether a person is a fiduciary with respect to the particular activity in question." Maniace v. Commerce Bank of Kansas City, 40 F.3d 264, 267 (8th Cir. 1994) (internal quotations omitted). Accordingly, the Court must determine whether Capital Guardian was acting as a fiduciary during the liquidation process.

Capital Guardian asserts that it was not a fiduciary at the time that it executed the liquidation of the Plans' assets because the RPIS had already removed it as investment manager and replaced it with Barclays. Further, Capital Guardian argues it was acting at the direction of the RPIS and U.S. Bank. Accordingly, Capital Guardian contends that it lacked discretionary control over the assets and was acting as a "mere custodian" during the liquidation process. Def.'s Mem. in Supp. of Mot. to Dismiss [Docket No. 27] at 32.

Section 1002(21)(A) defines a fiduciary as one who "exercises any authority or control respecting management or disposition of [plan] assets." Although Plaintiffs directed Capital Guardian by determining the date of the sale, Capital Guardian specified the manner in which it would liquidate the ACWE Fund investment, including the use of a liquidating account, and directed the sale of the assets in the liquidating account, including determining which foreign exchanges it would use to sell the assets. Accordingly, Plaintiffs have alleged sufficient facts to

state a claim that Capital Guardian's control over the Plans' assets qualifies it as an ERISA fiduciary. Although Capital Guardian's authority and control over the Plans' assets would be sufficient to qualify it as an ERISA fiduciary, Plaintiffs also alleged Capital Guardian maintained discretionary control over the management of the Plans' assets even after Barclay was appointed investment manager. Plaintiffs have set forth sufficient facts to state a claim that Capital Guardian acted as an ERISA fiduciary during the liquidation process.

### 2. ERISA Preemption of State Law Claims

ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). The term "relate to" in the preemption clause has been "given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985) (citation omitted).

Plaintiffs concede that if the Court finds that Capital Guardian is an ERISA fiduciary, then their state law claims are preempted. Accordingly, having found that Plaintiffs have stated a claim that Capital Guardian is an ERISA fiduciary, the issue of ERISA preemption is decided here. However, regardless of the Court's finding regarding Capital Guardian's fiduciary status, Plaintiffs state law claims would be preempted. Because Plaintiffs' state law claims directly reference the Plans, and thus "relate to" an employee benefit plan, they are preempted by operation of § 1144(a).[2]

---

[2] The Court's conclusion that Plaintiffs' state law claims are preempted does not end the analysis. The Eighth Circuit has concluded that when state law is preempted by ERISA, the district court should determine whether the plaintiff's complaint "state[s] a cause of action under either an express provision of ERISA or federal common law." Slice v. Sons of Norway, 978 F.2d 1045, 1046 (8th Cir. 1992). However, neither party addressed how the Court should

**B.     Motion to Strike**

Capital Guardian moves to strike Plaintiffs' jury demand. Capital Guardian asserts that neither ERISA nor the Seventh Amendment of the United States Constitution provide Plaintiffs with the right to a jury trial. Capital Guardian also moves to strike Plaintiffs' request for damages. In its memorandum and at oral argument, Capital Guardian characterized the damages Plaintiffs seek as compensatory, consequential, extra-contractual, and lost opportunity profits.

**1.     Right to Jury Trial**

Plaintiffs assert the Seventh Amendment provides them with a right to a jury trial because the remedy they seek is legal rather than equitable. Capital Guardian contends that the Seventh Amendment does not provide Plaintiffs with a right to a jury trial because ERISA only allows Plaintiffs to obtain equitable relief and because common law claims analogous to ERISA claims are equitable in nature.

The Seventh Amendment provides as follows: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of a trial by jury shall be preserved." U.S. Const. amend VII. "The right to a jury trial under the [S]eventh [A]mendment depends on the nature of the issue to be tried." In re Vorpahl, 695 F.2d 318, 322 (8th Cir. 1982). The closest the Eighth Circuit has come to addressing whether there is a right to a jury trial in a claim for monetary damages based on ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), was its decision in In re Vorpahl, where the court concluded that a jury trial is not required under section 502. Id. However, in that case the plaintiffs were plan beneficiaries who sued the plan's trustees for

---

construe Plaintiffs' state law claims and thus no determination regarding the construction of those claims will be made in this Order.

present and future benefits under the plan. Id. The Eighth Circuit explained that "[t]he mere fact that petitioners pray for monetary relief in part does not mandate that this action be characterized as legal rather than equitable. . . . Rather, because any monetary relief turns on a determination of entitlement to benefits, we consider such relief to be an integral part of an equitable action." Id.

In contrast, here the Plans, their administrators, and the trustee, have filed suit against a co-fiduciary for damages caused by breach of fiduciary duty. In the instant case, the claim for damages is not to determine benefits under the plan or enforcement of the trust, the claim is legal in nature. Accordingly, the Seventh Amendment affords Plaintiffs with the right to a jury trial and Capital Guardian's Motion to Strike Plaintiffs' jury demand is denied.

### 2. Monetary Damages

There is no support for the proposition that Plaintiffs may not seek money damages under ERISA § 409(a), 29 U.S.C. § 1109(a), for claims other than those for benefits due under the plan. To the contrary, the Supreme Court has explained:

> Section 409(a) . . . makes fiduciaries liable for breach of these duties, and specifies the remedies available against them: The fiduciary is personally liable for damages ("to make good to [the] plan any losses to the plan resulting from each such breach"), for restitution ("to restore to [the] plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary"), and for "such other equitable or remedial relief as the court may deem appropriate," including removal of the fiduciary.

Mertens v. Hewitt Assocs., 508 U.S. 248, 252 (1993) (quoting section 409(a)). Accordingly, Capital Guardian's Motion to Strike Plaintiffs' request for damages is also denied.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Capital Guardian Trust Company's Motion to Dismiss [Docket No. 25] and Motion to Strike [Docket No. 30] are **DENIED**.

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  July 22, 2008.